(May 27, 1922.)

ANNA M. PETERSON, Respondent, v. ALBERT C. PETERSON and JOHN VENABLE, Appellants.

[207 Pac. 425.]

COMMUNITY PROPERTY—CHARACTER OF WIFE'S INTEREST—EFFECT OF DISSOLUTION OF MARITAL COMMUNITY BY DIVORCE OBTAINED IN FOREIGN JURISDICTION.

1. The interest of a wife in the community property is a vested interest, and as to degree, quality, nature and extent, is the same as that of her husband.

2. The dissolution of a marital community caused by the wife obtaining a divorce in a foreign jurisdiction cannot divest her of

her interest in the community property, where the validity of such divorce proceedings is not challenged by the husband in the proceedings afterward brought by her to establish her interest in such community property.

3. Where either husband or·wife abandons the other and goes to a foreign jurisdiction and establishes a residence therein, and obtains a divorce from the other, by constructive service, the courts of this state are not bound to recognize the validity of such divorce proceedings under the "full faith and credit" clause of the federal constitution.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to quiet title. Judgment for plaintiff and defendants appeal. *Affirmed.*

P. E. Cavaney and Jas. S. Bogart, for Appellants.

An action for divorce is an action *in rem* and respondent having procured her divorce in Washington, said court could not make a binding decree *in personam* against the appellant in Idaho. Especially is this the rule affecting the property rights of the parties. (*Pennoyer v. Neff,* 95 U. S. 714, 24 L. ed. 565; *Proctor v. Proctor,* 215 Ill. 275, 106 Am. St. 168, 2 Ann. Cas. 819, 74 N. E. 145, 69 L. R. ·A. 673; *Haddock v. Haddock,* 201 U. S. 562, 5 Ann. Cas. 1, 26 Sup. Ct. 525, 50 L. ed. 867; 2 Black on Judgments, sec. 933; 19 C. J. 22.)

The appellant never having been within the jurisdiction of the state where the divorce was granted, nor having entered his appearance, a decree in Washington could not be enforced against the appellant in Idaho so far as the property rights were concerned. (*McVicker v. Beedy,* 31 Me. 314, 50 Am. Dec. 666; *Phelps v. Brewer,* 9 Cush. (Mass.) 390, 57 Am. Dec. 56; *Grant v. Swank,* 74 W. Va. 93, Ann. Cas. 1917C, 286, 81 S. E. 967, L. R. A. 1915B, 881; *Barrett v. Failing,* 111 U. S. 523, 4 Sup. Ct. 598, 28 L. ed. 505; *Keenan v. Keenan,* 40 Nev. 351, 164 Pac. 351; *Mott v. Mott,*

82 Cal. 413, 22 Pac. 1140; *Barnett v. Barnett,* 9 N. M. 205, 50 Pac. 337.)

The dissolution of the marriage and a division of the property of the spouses were so inseparably connected as a single cause of action that a judgment on a part of the cause is necessarily *res judicata* as to the cause. (*Bedal v. Sake,* 10 Ida. 270, 77 Pac. 638, 66 L. R. A. 60.)

Where a wife abandons her husband and the homestead and contributes nothing toward the success of the homestead, she is not in a position to claim one-half of the gains made by the husband. (*Wheat v. Owens,* 15 Tex. 241, 65 Am. Dec. 164.)

G. W. Lamson, for Respondent.

"The weight of authority is that the former spouses hold the property as tenants in common, subject to the payment of the debts of the marital partnership." (McKay on Community Property, p. 470, sec. 413; *De Godey v. Godey,* 39 Cal. 157; *Biggi v. Biggi,* 98 Cal. 35, 35 Am. St. 141, 32 Pac. 803; *Whetstone v. Coffey,* 48 Tex. 269; *Kirkwood v. Donman,* 80 Tex. 645, 26 Am. St. 770, 16 S. W. 428; *Southwestern Mfg. Co. v. Swan* (Tex. Civ.), 43 S. W. 813; *Gratton v. Weber,* 47 Fed. 852; *Ambrose v. Moore,* 46 Wash. 463, 90 Pac. 588, 11 L. R. A., N. S., 103; *James v. James,* 51 Wash. 60, 97 Pac. 1113, 98 Pac. 1115; *Tabler v. Peverill,* 4 Cal. App. 671, 88 Pac. 994; *Thomas v. Thomas,* 27 Okl. 784, Ann. Cas. 1912C, 713, 109 Pac. 825, 113 Pac. 1058, 35 L. R. A., N. S., 124; *Stelz v. Shreck,* 128 N. Y. 263, 26 Am. St. 475, 28 N. E. 510, 13 L. R. A. 325; 9 R. C. L., Divorce and Separation, sec. 319; *Garrozi v. Dastas,* 204 U. S. 64, 27 Sup. Ct. 224, 51 L. ed. 369.)

"Where no disposition of property is made at the time of the decree of divorce the parties become tenants in common and a separate action may be brought for a partition thereof. In such action the property found in the possession of the parties at the dissolution of the community is, presumptively, community, whether or not the community

is dissolved by death of one of the parties or by decree of a court.'' (Speer's Law of Marital Rights in Texas, sec. 551, pp. 712, 713.)

The fixed interest in the community vests in the wife. (*Kohny v. Dunbar*, 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107.)

LEE, J.—Appellant and respondent intermarried in 1904, and were thereafter husband and wife until September 26, 1916, when respondent, who had left her husband some three years before and taken up her residence in the state of Washington, secured a divorce from him in the courts of that state, upon constructive service of summons. During the marital relation, appellant filed a homestead entry upon the SW. ¼ of the SE. ¼ of sec. 24, T. 2 N., R. 2 W., B. M. This husband and wife occupied these premises as their home during the period they were required to live upon the same in order to secure patent, and until the wife took up her residence in the state of Washington, so that the property in question was community property at the time respondent secured her divorce and thereby dissolved the marital community. The decree of divorce was limited to a dissolution of the marriage relation, and did not attempt to adjust any property rights of the parties. Respondent brings this action against her former husband to quiet title in her to an undivided half interest in said homestead, and for an accounting of the personal property and partition of said real estate. Appellant demurred generally and specially, and moved to strike certain parts of the complaint, and all of said pleas having been overruled, he answered, admitting the marital relation, that said property described in the complaint had been acquired as therein alleged, and that the same was community property, but denied all of the allegations relating to his failure to support respondent while she was his wife, and alleged by way of cross-complaint that she deserted and abandoned him and said homestead and departed from the state without cause or reason therefor, and procured said divorce in the state of

.Washington without his knowledge or consent, he never appearing in said action nor authorizing any appearance on his behalf, and prayed that respondent should be adjudged to have no right, title or interest in or to said premises.

The cause was tried to the court, who found generally for the respondent as to the material allegations of her complaint, that said premises were acquired under the homestead law by the joint effort and residence thereon of both of them during their four years of joint occupancy, that she made and had recorded her declaration of homestead upon the same, that by reason of her failing health and destitute circumstances she left the state of Idaho and went to friends in Washington, where she procured a divorce, and had not since returned, that after she left said homestead appellant had sold all of their community personal property, and had received certain rentals for the land during the years following her absence, in all amounting to $739.43, but also found that the husband had discharged a mortgage of $600 against said real estate, and as a conclusion held that from the time respondent secured said divorce appellant held an undivided interest in said premises in trust for her and that she was also entitled to receive from the proceeds of the sale of the personal property and the rents and proceeds of said real estate during said time $576, less credit for one-half the amount paid by appellant to discharge said mortgage, including interest, and that she was owner in fee and entitled to the possession of an undivided one-half interest in and to said premises, and a decree was entered in accordance therewith, from which this appeal is taken.

The question here presented for determination is as to whether or not a married woman may remove to a foreign jurisdiction and invoke the power of the courts of such state to dissolve the marital community, upon constructive service of summons, and thereafter return to this state and through its courts assert a right to her half of the community property.

In *Bedal v. Sake,* 10 Ida. 270, 77 Pac. 638, 66 L. R. A. 60, this court held that one who voluntarily leaves this juris-

diction and the domicile and community property located in this state, and obtains a decree of divorce in a foreign jurisdiction, cannot maintain an independent action thereafter in this jurisdiction for a division of the community property. This would appear to be decisive of the question presented by the instant case, unless the law pertaining to the interest of a wife has been modified since that decision was rendered in 1904, or unless the court now departs from the doctrine announced in that case.

R. S., sec. 2505, at the time of the Bedal-Sake decision, *supra,* gave the husband the management and control of the community property, with the same absolute power of disposition, other than testamentary as he had of his separate property, except as to that part of the community property used as a homestead by the husband and wife. This was modified by Sess. L. 1913, p. 425, providing that the husband could not sell, convey or encumber any of the community real estate unless the wife joined with him in executing the deed or other instrument of conveyance. A further amendment was made by Sess. L. 1915, p. 187, taking from the husband's control the earnings of the wife for her personal services, and the rents and profits of her separate estate. This section is now C. S., sec. 4666, and has not since been changed.

R. S., sec. 5713, provided that upon the death of the husband, one-half of the community property, subject to the community debts, should go to the surviving wife, and the other half was subject to his testamentary disposition; in the absence of such testamentary disposition, it was distributed as the separate property of the husband. This was amended by Sess. L. 1907, p. 346, providing that upon the death of either husband or wife, one-half of the community property should go to the survivor, subject to the community debts, and the other half should be held subject to the testamentary disposition of the deceased husband or wife. The rights of both husband and wife were for the first time recognized as being the same with regard to the power of testamentary disposition. Sess. L. 1911, p. 29, further modi-

fied this by limiting the right of both husband and wife to make such testamentary disposition to the children of such deceased person or to the parents of either spouse, and provided that in case there was no testamentary disposition, it should go to the survivor, and further, that upon the death of an intestate wife no administration of her interest in the community estate was necessary. No changes in the devolution of community property have since been made, this now being C. S., sec. 7803.

In the well-considered case of *Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107, decided in 1912, the statute law defining community property, the husband's right to manage and control the same, its devolution upon the death of either party, and the character of the wife's interest therein, under the law as it then stood, were gone into in an able and exhaustive opinion, wherein, among other things, it is said:

"The foregoing section of the statute recognizes the husband and wife as equal partners in the community estate, and it authorizes each to dispose of his or her half at will. It also provides that the survivor shall continue to be the owner of half of such property subject only to the payment of the community debts. This statute clearly and unmistakably provides that the surviving spouse takes his or her half of the community property, not by succession, descent or inheritance, but as survivor of the marital community"; and further that: "The one-half interest which the wife receives from the community property upon the death of her husband comes to her in her own right by reason of the death of the community agent and her survival of the dissolution of the community partnership."

In *Ewald v. Hufton,* 31 Ida. 373, 173 Pac. 247, in an equally well-considered opinion, it is held that under the laws of this state no distinction is made between husband and wife as to the degree, quantity and nature or extent of the interest each has in the community property, and that upon the dissolution of the community by death of either spouse, the survivor becomes a tenant in common with

the heirs of the deceased member in the community property then in existence. This decision reviews the holdings in the several states having statutory provisions similar to our own, reaffirms *Kohny v. Dunbar, supra,* and distinguishes the difference in the character of the estate held by either spouse under the cormunity property law of this state from what it is held to be in jurisdictions where the interest of the wife is a mere expectancy and not a vested interest. Under the several statutes and amendments mentioned, all of which were in force in their present form at the time the parties to this action acquired title to this homestead, as these statutes have been construed by the last-mentioned opinions of this court, it is clear that in a marital partnership, the interest of the wife in the community property is a vested interest, which is not divested *ipso facto* by the wife going to a foreign jurisdiction and dissolving the marital community by securing a divorce, and *Bedal v. Sake, supra,* so far as it holds a contrary doctrine, is hereby overruled.

Counsel for appellant urge with much force the injustice and unwisdom of a community property law which permits a wife to abandon her husband without just cause, go to a foreign jurisdiction and obtain a divorce from him upon constructive service, thereby dissolving the marital community, and then permits her to return to this state and invoke the power of its courts to quiet title in her to one-half of the community property, and it must be conceded that this condition of the law admits of designing and unscrupulous persons bringing about disastrous consequences to the community estate, because such estates are frequently in a condition that a dissolution in this manner would cause insolvency. However, this consideration is one that must address itself to the law-making power. Courts can only interpret and apply the law as they find it, and unless the doctrine announced in the Kohny and Ewald cases, *supra,* is overruled, and a construction given the several statutes mentioned which would do violence to their plain meaning, there is no escape from the conclusion that the interest of

a wife in the community property is a vested interest, and not an expectancy dependent upon her surviving her husband, and that she may dissolve such community by divorce proceedings without necessarily forfeiting her right to afterward assert her interest in such community property.

Both parties to this action earnestly contend that the other was at fault in their marital difficulties. The findings of the trial court indicate that it regarded the husband as the greater offender of the two. From a careful consideration of the testimony, much of which is by way of depositions, we conclude that in this respect honors are about even. But in our view of the law applicable to the essential facts involved in this controversy, which facts are conceded by both parties, that is, that this property is community property, we do not see wherein the question as to who was at fault in the matter of divorce proceedings is of controlling importance. The wife took up her residence in a foreign jurisdiction because she claims her health was broken by reason of the hard conditions of life she had to undergo while on this homestead, and sets up as grounds for divorce lack of support, cruel treatment and habitual intemperance on the part of her husband, all of which are grounds for divorce in this state, and she was awarded a divorce *a vinculo.* As to whether she acted in good faith in obtaining such divorce is not material to this inquiry, for appellant has recognized its validity, and therefore it follows that such proceedings dissolved the marital community as effectively as if the divorce had been obtained in this state.

If it be claimed that the law regulating the rights of husband and wife to the community property, its management, control and devolution after the death of either party, was intended to have application only where the community is dissolved by death, or if dissolved by divorce proceedings, where the party causing such dissolution was without fault, in order to claim such right, it may be replied that there is nothing in the language of these decisions, or in the community property law above referred to, that indicates such limitation is intended.

In the celebrated case of *Haddock v. Haddock*, 201 U. S. 562, 5 Ann. Cas. 1, 26 Sup. Ct. 525, 50 L. ed. 867, that court held that: "The mere domicile within the state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all of the other states by virtue of the 'full faith and credit' clause of the federal constitution against a nonresident who did not appear and who was only constructively served with notice of the pendency of the action."

In that action, both the husband and wife were residents of the state of New York. She sued the husband in the New York courts in 1899, obtaining personal service upon him, and alleged that they had been married in said state in 1868, where they both resided and where she continued to reside. She asked for a decree of separation from bed and board, and for alimony. The answer admitted the marriage, but claimed that it had been procured by fraud of the wife, and that by mutual consent a separation had immediately followed. The husband further set up that he had obtained a decree of divorce from her upon constructive service in the state of Connecticut in 1881. At the trial of the cause before a referee, the judgment-roll in the suit for divorce in the Connecticut court was offered in evidence by the husband, and was objected to on the ground that the Connecticut court had not obtained jurisdiction of the person of the defendant wife, the notice of the pendency of the suit being by publication, that she had not appeared in that action, and that the grounds upon which the Connecticut court had granted the divorce were false. The New York courts sustained this ruling, and error from the New York court was prosecuted to the United States supreme court, under the "full faith and credit" clause of the federal constitution. Justices Brown and Holmes filed dissenting opinions, with which Harlan and Brewer concurred, but so far as we are aware this decision of the United States supreme court, holding that a state is not bound to recognize a divorce granted in another state upon constructive service, where the adverse party was lawfully domiciled in

the state refusing such recognition, has never been overruled or modified, and is still the law.

C. S., sec. 4650, regulates the disposition of community property, including the homestead, upon a dissolution of a marriage by decree of a court, and subdivision 1 reads: "If the decree be rendered on the ground of adultery or extreme cruelty, the community property must be assigned to the respective parties in such proportion as the court, from all the facts of the case and the condition of the parties, deems just."

It is clear that under the holding in the Haddock case, state courts are not bound under the "full faith and credit" clause of the federal constitution to recognize the validity of divorces procured in sister states upon constructive service, where the adverse party is lawfully domiciled in such other state. It is therefore conceivable that under the provisions of our statute above quoted, the courts of this state may deny relief to either party of a marital community where such party has wrongfully deserted the other member of the community, gone into another state and sought to dissolve the marital relation by constructive service, and thereafter returned to this state for the purpose of being decreed her interest in the community property, where the resident member of the community challenges the validity of such divorce proceedings in the foreign state to dissolve the marital community, and sets up his rights under the laws of this state.

But in the instant case, no question has been raised as to the validity of the wife's divorce obtained in a foreign jurisdiction, and it results that the marriage community was dissolved upon its procurement. This being true, it follows that the judgment of the court below in quieting title in respondent to an undivided one-half interest in the community property must be affirmed, and it is so ordered. Costs awarded to respondent.

Rice, C. J., and Budge, McCarthy and Dunn, JJ., concur.